UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT


RACHEL WYATT,                        :
                                     :
               Plaintiff,    :    Case No. 2:11-cv-297
        v.                           :
                                     :
                                     :
CITY OF BARRE,                       :
TIMOTHY BOMBARDIER,                  :
JOE ADLSWORTH,                       :
ROBERT HOWARTH,                      :
AND CINDY HOWARTH,                   :
                                     :
               Defendants.   :


## Memorandum Opinion & Order:
## Defendants' Motions for Judgment on the Pleadings

    Plaintiff Rachel Wyatt has sued the City of Barre/Barre

City Fire Department, Chief Timothy Bombardier, Deputy Chief Joe

Aldsworth, Captain Robert Howarth and Call Force Firefighter

Cindy Howarth for actions taken against her during her time as

an employee of the Barre City Fire Department ("BCFD").

Plaintiff has alleged 14 counts: (1) Unlawful Sex Discrimination

in Violation of Title VII, (2) Breach of Contract, (3) Wrongful

Discharge in Violation of Public Policy, (4) Violation of Rights

under the First Amendment, (5) Violation of Rights under the

Vermont Constitution, Chapter 1, Article 13, (6) Violation of

the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §

2510 *et seq.*, (7) Violation of the Stored Communications Act

("SCA"), 18 U.S.C. § 2701 *et seq.*, (8) Tortious Invasion of

Privacy, (9) Violation of Due Process Clause of the U.S. Constitution, (10) Violation of Due Process under the Vermont Constitution, (11) Violation of Vermont's Occupational Safety and Health Act ("VOSHA"), Vt. Stat. Ann. tit. 21, § 221 *et seq.*, (12) Infliction of Emotional Distress, (13) Unlawful Conspiracy, and (14) Violation of Vermont's Fair Employment Practices Act ("VFEPA"), Vt. Stat. Ann. tit. 21, § 495 *et seq.*

BCFD has filed a Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c) for all counts against it. It also requests its name be removed from the caption.

The City of Barre has filed a Motion for Judgment on the Pleadings for Counts Six, Seven, Eight and Thirteen.

Defendant Timothy Bombardier has filed a Motion for Judgment on the Pleadings for Counts Two, Three, Five through Eight, and Ten through Fourteen.

Defendant Joe Aldsworth had previously filed a Motion to Dismiss Counts Two, Three, and Five through Fourteen. The Court granted dismissal on Counts Two, Three, and Six through Ten. Wyatt v. City of Barre/Barre City Fire Dept., No. 2:11-CV-00297, 2012 WL 1435708, at *9 (D. Vt. Apr. 25, 2012). The Court denied dismissal on Counts Five and Eleven through Fourteen. Wyatt, 2012 WL 1435708, at *9. Deputy Chief Aldsworth then filed a Motion for Judgment on the Pleadings for Count Eleven.

Defendant Robert Howarth has filed a Motion for Judgment on the Pleadings for Counts One, Two, Three, Five through Twelve, and Fourteen.

Defendant Cindy Howarth has filed a Motion for Judgment on the Pleadings for Counts One through Twelve, and Count Fourteen.

## Background

All facts in this section are taken from Plaintiff's Complaint and will be accepted as true for the purposes of this motion. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 666 (2009).

All individual parties to this lawsuit are employed by BCFD in some capacity. Timothy Bombardier is Chief of the Barre City Police and Fire Departments. He also oversees Barre's EMT services which are combined with the Fire Department. Chief Bombardier was appointed to his position after Plaintiff was hired.

Joe Aldsworth is the Deputy Chief of BCFD. At the time of Plaintiff's hiring, he was a firefighter/paramedic but was later promoted.

Robert Howarth is a Captain in BCFD. He was a Lieutenant at the time of Plaintiff's hiring and was frequently her direct supervisor in both capacities. Cindy Howarth is Captain Howarth's wife and also serves as a Call Force Firefighter.

On March 25, 2009, Plaintiff was hired as a BCFD Call Force Firefighter. The hiring required that Plaintiff pass a written exam to obtain either EMT-B certification or Firefighter-1 Certification within 18 months. Plaintiff was issued a pager which transmitted several distinct tones depending on the nature of the emergency call. Plaintiff responded to all types of calls regardless of certification, knowing that she could cover for others at the station even if she was not yet certified to respond at the scene.

According to Plaintiff, Robert and Cindy Howarth created an atmosphere in the station that was severely and pervasively offensive, demeaning and hostile to her. The Howarths' conduct included calling Plaintiff a "dumb blonde" and stating publicly their belief that Plaintiff was "just playing firefighter to find a husband." Cindy Howarth frequently stared at Plaintiff in an intimidating and uncomfortable fashion. Cindy Howarth was also responsible for hiding and/or disposing of Plaintiff's time sheets, her lunch, and on at least one occasion, her department-issued firefighting gear. Captain Howarth refused to interact with Plaintiff altogether and would leave a lunch table if she sat down.

Plaintiff frequently complained about the Howarths' actions to Chief Bombardier, but she believes that the conduct escalated

after the complaints.  Cindy Howarth filed a report that Plaintiff had engaged in inappropriate contact with a married male firefighter during a drill.  The complaint was investigated and proven to be false, but Plaintiff found it degrading and humiliating.  Cindy Howarth publicly posted demeaning statements about Plaintiff on Facebook, saying that "women like her give us real, women firefighters a bad name."  On one occasion, Captain Howarth stated, in the presence of others, that Plaintiff's perfume was too strong and she would not be allowed to work unless she went home and showered.

Plaintiff enlisted the help of Deputy Chief Aldsworth who had witnessed the Howarths' treatment towards her.  Plaintiff had a meeting with Deputy Chief Aldsworth and Chief Bombardier and the Chief indicated he would bring a mediator into the station to resolve the conflict.  A mediator did come to the station once and provided department employees with questionnaires to complete.  Mediation proved to be unsuccessful.

After the meeting, Captain Howarth refused to allow Plaintiff to respond to calls on multiple occasions, depriving her of the pay she otherwise would have earned.  In one instance, he ordered Plaintiff to return home after she had arrived at the station, saying in front of other Department

personnel that she was "useless."  In another, Captain Howarth laughed mockingly when others told him Plaintiff had arrived at the station and he refused to allow her to respond to the call.

On February 23, 2010, Plaintiff had a meeting with Chief Bombardier during which he suspended her from responding to calls until she received her EMT-B Certification.  At this point, Plaintiff still had seven months left to complete her certification within 18 months of her hiring.  At the time of the suspension, there were other Call Force Firefighters without EMT-B Certifications who were not suspended and the 18-month period for certification had not been shortened for any other employee.  Without Plaintiff's knowledge, Chief Bombardier directed Captain Keith Cushman to send a staff-wide memo informing BCFD employees that Plaintiff was not permitted in any part of the station other than the classroom and the restroom.

Deputy Chief Aldsworth met with Plaintiff during her suspension to help her study for the written EMT-B exam.  Deputy Chief Aldsworth began to make unwelcomed sexual comments and advances towards her.  Plaintiff reported Deputy Chief Aldsworth's sexual harassment to Chief Bombardier on May 6, 2010.

After three months, Chief Bombardier revoked Plaintiff's suspension and she returned to the station with full access to every room. After she returned, Deputy Chief Aldsworth informed Plaintiff that she would have to complete forty hours of field training before she could respond to any calls. Once Plaintiff completed field training, Deputy Chief Aldsworth informed her that she would remain on restricted duty until she completed Emergency Vehicle Operator training, even though Plaintiff had already received this training.

In July 2010, BCFD circulated a memo asking for female volunteers in "Rosie's Girls," a program designed to teach young girls that women have a place in fire service and other male-dominated professions. Deputy Chief Aldsworth, with Chief Bombardier's endorsement, refused to let Plaintiff participate in the program.

Also in July 2010, Plaintiff made an anonymous call to the State's Emergency Medical Services expressing concern about an EMT colleague's fitness for duty. Plaintiff had previously seen the colleague break down emotionally at a response scene and Plaintiff was aware that the colleague had been hospitalized for a suicide attempt.

On August 31, 2010, Plaintiff met with Chief Bombardier and Deputy Chief Aldsworth about the anonymous phone call. When asked directly, Plaintiff denied making the call. In response to the denial, Plaintiff was suspended pending an investigation. As part of the investigation, Chief Bombardier obtained a copy of the recorded call and played it for four other firefighters, including Deputy Chief Aldsworth, to identify the voice on the call. Upon being satisfied that Plaintiff was the voice on the recorded call, Chief Bombardier fired Plaintiff for lying. Plaintiff alleges that the stated grounds were a pretext and the firing was actually retaliation for placing the call and for her previous reports of sexual harassment.

## Discussion

### I. Standard for Motion for Judgment on the Pleadings

All of the pending motions are for judgment on the pleadings under Fed. R. Civ. P. 12(c). In deciding a Rule 12(c) motion, courts employ the same standard applicable to Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010). Thus, the Court will accept all factual allegations in the Complaint as true and draw all reasonable inferences in the plaintiff's favor. Hayden, 594 F.3d at 160. To survive a Rule 12(c) motion, "Plaintiffs' Complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Iqbal, 556 U.S. at 678).  If the plaintiff has not nudged her claims across the line from conceivable to plausible, her Complaint must be dismissed.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007).

## II.  Barre City Fire Department

BCFD contends that it is not a suable entity and is not a properly named party to this suit.  Consequently, it claims all counts against it should be dismissed and the Plaintiff should be limited in her suit to the City of Barre alone.  Plaintiff agrees that the City of Barre is the real party in interest but contends that the current caption serves to clarify the nature of the action.

It is well-settled law that municipal departments in Vermont cannot be sued separately from their municipalities. Hee v. Everhoff, 812 F. Supp. 1350, 1351 (D. Vt. 1993); Gorton v. Burlington Police Dep't, 23 F. Supp. 2d. 454, 456 (D. Vt. 1998).  The only debatable question is whether the department can be included in the caption.

The Court finds that BCFD should not be named in the caption.  The desire on the part of the Plaintiff to clarify the nature of the action is understandable.  However, including BCFD in the caption implies a legal liability that it does not and

cannot have.  To the extent that any claims were filed against BCFD, those claims must be dismissed.

The Barre City Fire Department's Motion for Judgment on the Pleadings on all counts is GRANTED and the caption shall be amended.

### III. City of Barre

The City of Barre has filed Motions for Judgment on the Pleadings for Counts (6) Violations of the ECPA, (7) Violations of the SCA, (8) Tortious Invasion of Privacy and (13) Unlawful Conspiracy.

#### a. Count Six: Violations of the Electronic Communications Privacy Act

Plaintiff alleges that Chief Bombardier, an employee of the City of Barre, obtaining and playing the voicemail message that she left with Emergency Medical Services violated the ECPA.  The ECPA provides both civil and criminal penalties against any person who intentionally (i) "intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept" any oral communication; (ii) uses an "electronic, mechanical, or other device" to do so; (iii) discloses or endeavors to disclose the contents of such intercepted communication to any other person; or (iv) uses or endeavors to use the contents of such intercepted communications.  Arias v. Mutual Cent. Alarm Serv., 202 F.3d 553, 556-57 (2d Cir. 2000)

10

(citing 18 U.S.C. § 2511(1)(a)-(d)).  Courts have defined

"intercept" narrowly to mean captured contemporaneously during

the actual transmission.  See Konop v. Hawaiian Airlines, Inc.,

302 F.3d 868, 878 (11th Cir. 2002).  A consent exception to the

ECPA applies if the person recording is a party to the

conversation or if either party has given prior consent to its

recording.  18 U.S.C. § 2511(2)(d).  A business use exception

applies if the recording is done in the ordinary course of

business.  18 U.S.C. § 2510(5)(a)(i).

Plaintiff has alleged insufficient facts to support

unlawful contemporaneous recording.  Her version of the facts is

that Chief Bombardier learned about the phone call and then

obtained a copy.  Moreover, Plaintiff concedes that she

consented to the recording of the original anonymous voicemail.

Under this set of facts, the recording was not unlawful because

it was done with Plaintiff's consent and it was not

contemporaneous because Defendants were not listening as the

call was being made.

Plaintiff objects to the message being replayed for her co-

workers without her consent, which she categorizes as new

interceptions.  As this Court has previously said, replaying a

legally recorded message is not an interception under the ECPA.

Wyatt, 2012 WL 1435708, at *4 (citing Noel v. Hall, 569 F.3d

743, 749 (9th Cir. 2009)).  Absent any allegation of unlawful

contemporaneous recording, no "interception" occurred within the

meaning of the ECPA.

Plaintiff has failed to state a plausible set of facts

under which the Defendants violated the ECPA.  The City of

Barre's Motion for Judgment on the Pleadings for Count Six is

GRANTED.

### b. Count Seven: Violations of the Stored Communications Act

In addition to a claim under the ECPA, Plaintiff also

alleges violation of the SCA.  The SCA is broader than ECPA in

that it prohibits unauthorized access, not interception.  The

SCA applies to whoever:

> **(1)** intentionally accesses without authorization a
> facility through which an electronic communication
> service is provided; or
>
> **(2)** intentionally exceeds an authorization to access
> that facility; and thereby obtains, alters, or
> prevents authorized access to a wire or electronic
> communication while it is in electronic storage in
> such system shall be punished as provided in
> subsection (b) of this section.

18 U.S.C. § 2701(a).  The SCA allows for authorization to access

the facility (1) by the person or entity providing a wire or

electronic communications service, or (2) by a user of that

service with respect to a communication of or intended for that

user.  18 U.S.C. § 2701(c).  In addition, the SCA only applies

12

if the communication is in storage within a facility provided by an electronic communication service. See Thompson v. Ross, No. 2:10-cv-479, 2010 WL 3896533, at *4 (W.D. Pa. Sept. 30, 2010). "Electronic communication service" means any service which provides to users thereof the ability to send or receive wire or electronic communications. 18 U.S.C. § 2510(15).

There is no dispute that Chief Bombardier, an employee of the City of Barre, accessed the voicemail. According to the Complaint, Chief Bombardier was made aware of the voicemail, he questioned Plaintiff about it and then he obtained a copy. The only questions are whether he was authorized to access the recording and whether it was in a facility provided by an electronic communication service at the time.

In order to have violated the SCA, Chief Bombardier would need to have listened to the recording while it was still in the voicemail system. Thompson illustrates this point well. In that case, the plaintiff had downloaded personal emails from his email account and stored them in his laptop hard drive. Thompson, 2010 WL 3896533, at *1. The defendants stole his laptop and accessed the emails. Id. The court found that once the plaintiff saved the emails to his laptop, they were no longer within a facility provided by an electronic communication service. Id. at *3-5. In order for there to be a violation of

13

the SCA, the defendants would have had to view the emails while still in the storage provided by plaintiff's internet service provider.  Id.  Once the plaintiff removed them from his personal email and downloaded them to his laptop, the SCA no longer applied.  Id.

Likewise, the Court does not find a plausible allegation that Chief Bombardier accessed the recording within a facility provided by an electronic communication service.  The Complaint states only that he had knowledge of the call before he obtained a copy and listened to it.  Plaintiff does not allege that Chief Bombardier listened to the call while it was still within the voicemail system.  Once the copy was made, the recording was no longer within a facility provided by an electronic communication service.  Chief Bombardier was free to access the copy without violating the SCA.

Moreover, the Court finds it reasonable to consider Chief Bombardier one of the intended recipients of the voicemail.  In reporting concerns about the mental stability of an EMT, Plaintiff was not intending to reach any one specific person.  Her audience included anyone charged with ensuring the competence and integrity of EMT services.  As Chief of the combined Fire and EMT Department in Barre, Chief Bombardier is included in that group.  It was entirely reasonable for the

Plaintiff to expect that Chief Bombardier would be informed of the call and foresee that he would have an interest in investigating its contents.  The Court finds that Chief Bombardier had authorization to access the voicemail as one of its intended recipients.

The City of Barre's Motion for Judgment on the Pleadings for Count Seven is GRANTED.

### c. Count Eight: Tortious Invasion of Privacy

While there are several forms of invasion of privacy, <u>See</u> Restatement (Second) of Torts § 652A (1977), Plaintiff claims only that the City of Barre has committed the "intrusion upon seclusion" type.  Plaintiff's privacy claim is limited to Chief Bombardier obtaining and playing her anonymous phone call in front of her co-workers.  The Court has already dismissed the invasion of privacy claim against Deputy Chief Aldsworth who merely listened to the call.  <u>Wyatt</u>, 2012 WL 1435708, at *6 (finding Plaintiff had no reasonable expectation of privacy once she voluntarily left the recording).

To state a cause of action for intrusion upon seclusion, Plaintiff must allege "an intentional interference with her interest in solitude or seclusion, either as to her person or as to her private affairs or concerns, of a kind that would be

highly offensive to a reasonable person." Hodgdan v. Mt.
Mansfield Co., 624 A.2d 1122, 1129 (Vt. 1992) (quoting
Restatement (Second) of Torts § 652A (1977)). Moreover, the
intrusion must be substantial. Hodgdan, 624 A.2d at 1129.
However, it does not require publicity of a person's private
interests or affairs. Id.

The Court continues to find Plaintiff's privacy claim to be
baseless. "[A] person has no legitimate expectation of privacy
in information he voluntarily turns over to third parties."
Smith v. Maryland, 442 U.S. 735, 743-44 (1979). By leaving a
recorded voice message, Plaintiff waived any right to the
privacy of its contents. This is as true for the City of Barre
as it was for Deputy Chief Aldsworth.

The City of Barre's Motion for Judgment on the Pleadings
for Count Eight is GRANTED.

### d. Count Thirteen: Unlawful Conspiracy

Plaintiff alleges that the Defendants in this case
conspired among themselves and with others to deprive Plaintiff
of her First Amendment rights, as prohibited by 42 U.S.C. §
1985. The City of Barre has filed a Motion for Judgment on the
Pleadings, arguing that the intra-enterprise doctrine bars
Plaintiff's claim.

To state a cause of action under 42 U.S.C. § 1985(3), plaintiffs must allege: "(1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999). A conspiracy "need not be shown by proof of an explicit agreement but can be established by showing that the 'parties have a tacit understanding to carry out the prohibited conduct.'" Thomas, 165 F.3d at 146 (quoting United States v. Rubin, 844 F.2d 979, 984 (2d Cir. 1988)). Furthermore, the conspiracy must also be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." Thomas, 165 F.3d at 146 (quoting United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 829 (1983)).

In this case, Plaintiff has alleged sufficient facts that a conspiracy existed. She has made a plausible case that there was a tacit agreement among multiple people to subject her to harassment. She has also alleged that this harassment was motivated by her gender with the desire to deprive her of First Amendment rights. She has alleged overt acts including her

17

firing, preventing her from responding to emergency calls, and
repeated acts of taunting and verbal abuse.

Once a conspiracy is sufficiently pled, the question
becomes whether it is barred by the intra-enterprise doctrine.
The intra-enterprise conspiracy doctrine holds that a conspiracy
does not exist when multiple members of the same entity are
enforcing a single act on behalf of the entity and within the
scope of their employment.  <u>Girard v. 94th St. & Fifth Ave.</u>
<u>Corp.</u>, 530 F.2d 66, 71 (2d Cir. 1976).

The intra-enterprise doctrine does not apply to the
allegations in this case.  Plaintiff has alleged more than just
a single act.  In addition to her firing after the phone call,
she has also alleged verbal abuse and being denied the
opportunity to respond to emergency calls.  Moreover, Defendants
were not always acting within the scope of their employment.
The alleged sexual harassment from Deputy Chief Aldsworth and
the taunting from Cindy Howarth would both fall outside of the
scope of employment.

Since she has alleged multiple acts by multiple members of
the fire department acting outside the scope of their
employment, Plaintiff has alleged sufficient facts to state a
plausible claim that is not barred by the intra-enterprise
conspiracy doctrine.

The City of Barre's Motion for Judgment on the Pleadings is DENIED.

## IV.  Chief Timothy Bombardier

Chief Bombardier has filed a Motion for Judgment on the Pleadings for Counts (2) Breach of Contract, (3) Wrongful Discharge in Violation of Public Policy, (5) Violation of Free Speech rights under the Vermont Constitution Chapter One Article Thirteen, (6) Violation of the ECPA, (7) Violations of the SCA, (8) Invasion of Privacy, (10) Violation of Due Process rights under the Vermont Constitution, (11) Violation of VOSHA, (12) Infliction of Emotional Distress, (13) Unlawful Conspiracy, and (14) Violation of VFEPA.

### a. Immunity under Vermont Law

Chief Bombardier argues that he is absolutely immune from all claims under Vermont law pursuant to Vt. Stat. Ann. tit. 24, § 901.  This Court has previously considered a similar motion to dismiss from Deputy Chief Aldsworth but denied the motion because it was not clear that he was acting within the scope of his duties.  <u>Wyatt</u>, 2012 WL 1435708, at *8-9.

Vt. Stat. Ann. tit. 24, § 901 states:

(a) Where an action is given to any appointed or elected municipal officer or town school district officer, the action shall be brought in the name of the town in which the officer serves and in the case of a town school district officer in the name of the

> town school district. If the action is given against
> such officers, it shall be brought against such town
> or town school district, as the case may be.

The Vermont Supreme Court has previously found that a Fire Chief

is an appointed officer for the purposes of the statute.

Gallipo v. City of Rutland, 789 A.2d 942, 954 (Vt. 2001).

The Vermont Supreme Court has established that an employee

was acting within the scope of his employment if the conduct

"(a) is of the kind the servant is employed to perform; (b)

occurs substantially within the authorized time and space

limits; (c) is actuated, at least in part, by a purpose to serve

the master; and (d) in a case in which force is intentionally

used by the servant against another . . . is not unexpectable by

the master." Doe v. Forrest, 853 A.2d 48, 54 (Vt. 2004)

(quoting Restatement (Second) of Agency § 229(1) (1958).  The

conduct of an employee falls outside the scope of employment if

it is "different in kind from that authorized, far beyond the

authorized time or space limits, or too little actuated by a

purpose to serve the master." Forrest, 853 A.2d at 54 (quoting

Restatement (Second) of Agency § 228(2)).  Whether an employee

was acting within the scope of his employment tends to be a

question of fact to be resolved by a jury but can be resolved as

a matter of law if the facts and inferences drawn are not in

dispute.  See Sweet v. Roy, 801 A.2d 694, 705 (Vt. 2002) (citing Ploof v. Putnam, 75 A. 277, 279 (Vt. 1910)).

In this case, it is not clear that Chief Bombardier was acting within his official duties at all times.  The Chief cannot be held liable for merely using poor judgment in adjudicating disputes between employees.  However, the Complaint alleges that the Chief's goal in investigating Plaintiff's phone call was solely to harass and embarrass her.  Taken as true, this states a plausible claim that the Chief was acting outside the scope of his employment.

Chief Bombardier's Motion for Judgment on the Pleadings for all counts arising under Vermont law is DENIED.  This includes Counts (3) Wrongful Discharge in Violation of Public Policy, (5) Violation of Free Speech rights under the Vermont Constitution, (10) Violation of Due Process rights under Vermont Constitution, (11) Violation of VOSHA, (12) Infliction of Emotional Distress, and (14) Violation of VFEPA.

### b. Count Two: Breach of Contract

Both parties agree that Plaintiff has not alleged a Breach of Contract claim against Chief Bombardier in his individual capacity.  Chief Bombardier's Motion for Judgment on the Pleadings for Count Two is GRANTED.

### c. Count Six: Violations of the Electronic Communications Privacy Act

Plaintiff has alleged violations of the ECPA against Chief Bombardier in his individual capacity for listening to her anonymous voicemail message.  Much like the allegation against the City of Barre, Plaintiff must allege unlawful contemporaneous recording in order to state a plausible claim under the ECPA. <u>Konop</u>, 302 F.3d at 878.  Instead, she alleged that Chief Bombardier learned of the call and then obtained a copy.  This set of allegations does not meet the terms of the ECPA.

Chief Bombardier's Motion for Judgment on the Pleadings for Count Six is GRANTED

### d. Count Seven: Violations of the Stored Communications Act

Plaintiff has also alleged violation of the SCA against Chief Bombardier in his individual capacity for accessing her anonymous voicemail.  In order to state a claim under the SCA, Plaintiff must allege that Chief Bombardier accessed the voicemail without authorization while it was in a facility provided by an electronic communication system.  18 U.S.C. § 2701(a).  Instead, Plaintiff has alleged that he obtained a copy of the call outside of the facility provided by the voicemail carrier.  Furthermore, his status as head of the combined Fire

and EMT services in Barre grants him authorization as one of the
intended recipients of the voicemail.

Chief Bombardier's Motion for Judgment on the Pleadings for
Count Seven is GRANTED.

### e. Count Eight: Tortious Invasion of Privacy

Plaintiff alleges invasion of privacy against Chief
Bombardier in listening to her anonymous voicemail message.
Just as with the allegations against the City of Barre,
Plaintiff has no legitimate expectation of privacy in
information she voluntarily turned over to third parties. Smith,
442 U.S. at 743-44.

Chief Bombardier's Motion for Judgment on the Pleadings for
Count Eight is GRANTED.

### f. Count Thirteen: Unlawful Conspiracy

Plaintiff has alleged a conspiracy among all Defendants to
deprive her of her First Amendment rights in violation of 42
U.S.C. § 1985.  Along with the City of Barre, Chief Bombardier
has filed a Motion for Judgment on the Pleadings, arguing that
the claim is barred by the intra-enterprise doctrine.

Plaintiff has stated a plausible claim that there was a
tacit station-wide agreement to deprive her of her rights.
Furthermore, she has alleged multiple acts by employees acting

outside of their employment.  The intra-enterprise doctrine does not apply to this case.

Chief Bombardier's Motion for Judgment on the Pleadings for Count Thirteen is DENIED.

## V.   Deputy Chief Joe Aldsworth

After the Court denied him immunity from all claims arising under Vermont law, Deputy Chief Aldsworth moved for judgment on the pleadings for Count Eleven, Violation of VOSHA.

### a. Count Eleven: Violation of Vermont's Occupational Safety and Health Act

Plaintiff alleges that her termination was retaliation for a complaint of workplace safety in violation of VOSHA, Vt. Stat. Ann. tit. 21, § 221, *et seq*.  The Act states:

> No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself, herself, or others of any right afforded by this chapter.

Id. § 231(a).  The Act also provides for a private right of action for any aggrieved employee.  Id. § 232.  The Vermont Supreme Court has stated the elements of a VOSHA retaliation claim as: (1) the plaintiff was engaged in a protected activity; (2) the defendants knew of that activity; (3) plaintiff suffered an adverse employment action; and (4) a causal connection exists

24

between plaintiff's protected activity and the adverse

employment action.  Mellin v. Flood Brook Union Sch. Dist., 790

A.2d 408, 417-18 (Vt. 2001).[1]

As it ruled in his previous motions, the Court finds that

Deputy Chief Aldsworth cannot be held liable for Plaintiff's

termination.  Wyatt, 2012 WL 1435708, at *7.  Despite his role

in questioning Plaintiff and investigating the contents of the

call, Deputy Chief Aldsworth did not have the authority to

terminate Plaintiff's employment.  Any liability for termination

is limited to those responsible for making the decisions, Chief

Bombardier and the City of Barre.

Plaintiff has alleged that Deputy Chief Aldsworth engaged

in discriminatory actions other than her firing that were the

direct result of her phone call to EMS.  These include refusing

---

[1] Plaintiff contends that the Mellin elements apply only to
employers and not fellow employees. The statute itself provides
"No person shall discharge or in any manner discriminate. . . ."
Vt. Stat. Ann. tit. 21, § 231(a).  She argues that the third
prong of an adverse employment action is too high a bar to apply
to fellow employees and is not required by the statute.  The
Court makes no determination on the validity of this argument.
Instead, it finds that the second prong of Mellin is not met.
Deputy Chief Aldsworth lacked knowledge of the call at the time
of every action alleged other than the termination.  Therefore,
the call could not be the cause of any possible retaliation.
Whether an adverse employment action is required under the
statute is irrelevant for our purposes.

to allow her to respond to calls and refusing her participation in the Rosie's Girls program. However, none of these other actions are included in the Complaint for Count Eleven. The Complaint mentions only the termination as retaliation in Count Eleven.

Regardless, there is insufficient evidence that Deputy Chief Aldsworth had knowledge of the call in order to make it the cause of any alleged discrimination. The call was made in July 2010. Plaintiff was first questioned about it on August 31, 2010. Her identity as the caller was not revealed until later. Every action alleged, other than her termination, occurred in or before July 2010, well before there is any evidence that Deputy Chief Aldsworth knew Plaintiff had placed the anonymous call. Without any evidence of Deputy Chief Aldsworth's knowledge, Plaintiff has failed state a plausible claim that Deputy Chief Aldsworth acted in retaliation for her workplace complaint.

Deputy Chief Aldsworth's Motion for Judgment on the Pleadings for Count Eleven is GRANTED.

## VI. Captain Robert Howarth

Captain Howarth has filed motions for judgment on the pleadings for almost all counts. The only counts that he did

not request judgment on are Count Four (Violation of First Amendment Rights) and Count Thirteen (Unlawful Conspiracy).

### a. Immunity under Vermont Law

Captain Howarth claims immunity from all counts under Vermont law against him in his individual capacity.  He argues that Vt. Stat. Ann. tit. 24, § 901 grants him immunity in his position as Fire Captain.  As the Court has previously ruled, Section 901 grants immunity to all appointed and elected municipal officials so long as they are executing their official duties.  Wyatt, 2012 WL 1435708, at *9.

In Hee, this Court looked to the text of Vt. Stat. Ann. tit. 24, § 1931(a) to determine if police officers qualify as appointed officers.  812 F. Supp. at 1351.  Vt. Stat. Ann. tit. 24, § 1931(a) states: "The legislative body . . . of a municipality . . . may establish a police department and appoint police officers and a chief of police who shall be a police officer."  The Court in Hee determined, based on this language, that police officers were covered by Section 901.  812 F. Supp. at 1351.

The Court finds in this case that Captains in a fire department are appointed officers within the meaning of Section 901.  A similar statute governing fire departments states:

> The officers of a fire department shall consist of a
> chief engineer, an assistant chief engineer, and fire
> captains in such number as the legislative body of the
> municipality shall determine . . . . The legislative
> body may appoint and remove such officers, and fix
> their salaries or other compensation, subject to such
> rules and regulations as the legislative body may
> adopt.

Vt. Stat. Ann. tit. 24, § 1953.  The text of this statute makes clear that Fire Captains are appointed officers within the meaning of Section 901.

Plaintiff asserts Captain Howarth abused his official position as her supervisor and discriminated against her by refusing to interact with her and not allowing her to respond to calls when she was qualified.  In each instance, however, he was acting within his official capacity.  Captains in the Fire Department are granted authority to determine who should respond to emergency calls.  Plaintiff may feel that Captain Howarth acted unfairly in making these decisions but she fails to allege he acted outside of his official duties when engaging in the offensive acts.

Since Captain Howarth is an appointed officer under Section 901 and he was acting within his official duties, his Motion for Judgment on the Pleadings for all counts arising under Vermont law against him in his individual capacity is GRANTED.  These counts include Counts (2) Breach of Contract, (3) Wrongful

Discharge in Violation of Public Policy, (5) Violation of Free Speech rights under the Vermont Constitution, (8) Tortious Invasion of Privacy, (10) Violation of Due Process Rights under the Vermont Constitution, (11) Violation of VOSHA, (12) Infliction of Emotional Distress, and (14) Violation of VFEPA.

### b. Count One: Violations under Title VII

Plaintiff has claimed violations of Title VII of the Civil Rights Act of 1964 for discrimination against her because of her sex. Captain Howarth has filed a Motion for Judgment on the Pleadings arguing that employees and supervisors cannot be held liable in their individual capacities under Title VII. Plaintiff does not object to dismissal of this count against the Howarths.

Title VII does not impose liability on individuals. <u>Lore v. City of Syracuse</u>, 670 F.3d 127, 169 (2d Cir. 2012); <u>Goldstein v. Bombardier Capital, Inc.</u>, 167 F.R.D. 662, 667 (D. Vt. 1996).

The Court thus agrees, and Captain Howarth's Motion for Judgment on the Pleadings for Count One is GRANTED.

### c. Count Six: Violations of the Electronic Communications Privacy Act

Plaintiff has not alleged that Captain Howarth recorded, listened to, or even knew of her anonymous call to EMS. Captain

Howarth's Motion for Judgment on the Pleadings for Count Six is
GRANTED.

### d. Count Seven: Violations of the Stored Communications Act

Similarly, Plaintiff has not alleged that Captain Howarth
accessed the EMS voicemail that contained the anonymous call.
Captain Howarth's Motion for Judgment on the Pleadings for Count
Seven is GRANTED.

### e. Count Nine: Violations of the U.S. Constitution's Due Process Clause

Plaintiff alleges that her termination deprived her of a
property interest in her job with BCFD.  The Fourteenth
Amendment provides that a state may not "deprive any person of
life, liberty, or property, without due process of law." U.S.
Const. amend. XIV, § 1.

As the Court has previously said, it is not enough for
Plaintiff to allege that the Defendant participated in
circumstances that gave rise to the deprivation of
constitutional rights.  Wyatt, 2012 WL 1435708, at *7 (citing
Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)).  She must
also allege that Defendant directly participated in the
deprivation.  Id.

Plaintiff fails to meet this standard.  She has not alleged
sufficient facts that Captain Howarth played any role in the

decision to terminate her employment. The authority for that decision was Chief Bombardier's alone.

Captain Howarth's Motion for Judgment on the Pleadings for Count Nine is GRANTED.

## VII. Call Force Firefighter Cindy Howarth

Cindy Howarth has filed Motions for Judgment on the Pleadings for almost all of the fourteen counts. The only Count which did not request judgment on is Count Thirteen (Unlawful Conspiracy).

### a. Immunity under Vermont Law

Cindy Howarth claims immunity on all counts arising under Vermont law against her in her individual capacity. Unlike her husband, Cindy Howarth has claimed immunity under Vt. Stat. Ann. tit. 24, § 901a which covers municipal employees. Section 901a grants qualified immunity and does not apply to an act or omission of a municipal employee that was willful, intentional, or outside the scope of the employee's authority. Vt. Stat. Ann. tit. 24, § 901a(e).

Like Deputy Chief Aldsworth, it is not clear from the alleged facts that Cindy Howarth was acting in the scope of her employment. Mrs. Howarth is alleged to have engaged in repeated acts of harassment including calling the Plaintiff a "dumb blonde," posting demeaning messages on Facebook, and spreading

false rumors about the Plaintiff being intimate with other male firefighters. None of these actions were part of her official duties as a Call Force Firefighter.

Since it is not clear whether Cindy Howarth was acting within the scope of her duties, she is not entitled to immunity from all claims arising under Vermont law.

### b. Count One: Violation under Title VII

Both parties agree that Count One does not state a claim against Cindy Howarth in her individual capacity. Cindy Howarth's Motion for Judgment on the Pleadings on Count One is GRANTED.

### c. Count Two: Breach of Contract

Both parties agree that Plaintiff has not alleged Breach of Contract against Cindy Howarth in her individual capacity. Cindy Howarth's Motion for Judgment on the Pleading is GRANTED.

### d. Count Three: Wrongful Discharge in Violation of Public Policy

Plaintiff has not alleged that Cindy Howarth played any role in the decision to terminate her employment. Cindy Howarth's Motion for Judgment on the Pleadings for Count Three is GRANTED.

### e. Count Four: Violation of First Amendment Rights

Plaintiff claims that once she reported the Howarths' harassment to Chief Bombardier, the harassment escalated in retaliation and in violation of her First Amendment rights as protected by 42 U.S.C. § 1983. That statute states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. . .

42 U.S.C. § 1983. The U.S. Supreme Court has held the traditional definition of acting "under color of state law" requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." West v. Adkins, 487 U.S. 42, 49 (1988) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)).

In the context of workplace harassment claims, courts generally require that the harasser be a supervisor or have some degree of control over the plaintiff. Quinn v. Nassau County Police Dep't, 53 F. Supp. 2d 347, 355 (E.D.N.Y. 1999). Otherwise, it is difficult to establish that the abusive action was perpetrated "under color of state law" rather than as an

essentially private act of harassment.  <u>Quinn</u>, 53 F. Supp. 2d at
355.

In Cindy Howarth's case, it cannot be said that her alleged
harassment occurred under color of state law.  She was not the
Plaintiff's supervisor and was not exercising any authority
granted to her by the state.  Therefore, Cindy Howarth's actions
are not covered by 42 U.S.C. § 1983.

Cindy Howarth's Motion for Judgment on the Pleadings for
Count Four is GRANTED.

### f. Count Five: Violation of Free Speech Rights under Vermont Constitution

Similar to First Amendment retaliation claims, Vermont law
allows for a private remedy against deprivation of free speech
rights under its Constitution.  However, this remedy is only
available when the legislature has fashioned no other adequate
remedial scheme.  <u>Shields v. Gerhart</u>, 658 A.2d 924, 930 (Vt.
1995).

As Cindy Howarth has pointed out, the Vermont legislature
has provided adequate protection for Plaintiff's speech.  Her
anonymous phone call is protected by VOSHA and her reports of
sexual harassment are protected by VFEPA.  The text of these
statutes and subsequent court decisions make clear that each law

applies to co-workers in their individual capacities.  See Payne v. U.S. Airways, 2009 VT 90, ¶ 24, 987 A.2d 944, 954.

Plaintiff contends that Defendant cannot argue that adequate statutory avenues exist while also asking for dismissal under these statutes.  However, Shields does not require these options to be successful, only available. 658 A.2d at 934-35. Plaintiff's speech is protected against co-worker retaliation by statute for both her reports of harassment and her reports about workplace safety.  She is limited to proving her case under those remedies provided by the Vermont legislature.

Cindy Howarth's Motion for Judgment on the Pleadings for Count Five is GRANTED.

### g. Count Six: Violation of the Electronic Communications Privacy Act

There is no allegation that Cindy Howarth played any role in recording or listening to Plaintiff's anonymous voicemail to EMS.  Cindy Howarth's Motion for Judgment on the Pleadings for Count Six is GRANTED.

### h. Count Seven: Violation of the Stored Communications Act

Likewise, there is no allegation that Cindy Howarth accessed the EMS voicemail system.  Cindy Howarth's Motion for Judgment on the Pleading for Count Seven is GRANTED.

### i. Count Eight: Tortious Invasion of Privacy

The invasion of privacy claim has been limited to the "intrusion upon seclusion" type that Plaintiff believes resulted from playing the voicemail message for co-workers. However, there is no allegation that Cindy Howarth played any role in the playing of the message.

Cindy Howarth's Motion for Judgment on the Pleadings for Count Eight is GRANTED.

### j. Count Nine: Violation of the U.S. Constitution's Due Process Clause

Plaintiff has alleged that her termination violated a property right to her employment without due process, in violation of the Fourteenth Amendment to the U.S. Constitution. However, a due process claim requires the direct personal involvement of the defendant in order to be successful. Colon, 58 F.3d at 873 (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)). There has been no allegation in this case that Cindy Howarth played any direct role in the decision to terminate Plaintiff's employment.

Cindy Howarth's Motion for Judgment on the Pleadings for Count Nine is GRANTED.

### k. Count Ten: Due Process Rights under Vermont Constitution

Similarly, Plaintiff also alleges violations of due process under Article 10 of the Vermont Constitution arising from the decision to terminate her employment.  Article 10 states, "[N]or can any person be justly deprived of liberty, except by the laws of the land, or the judgment of the person's peers. . . ." Vt. Const. ch. I, art. 10.  While Article 10 only specifically mentions liberty, the Vermont Supreme Court has held that the Article protects the ability to pursue one's chosen profession. In re Smith, 730 A.2d 605, 612 (Vt. 1999).  However, this Court has made clear that liability under Article 10 requires direct responsibility for termination procedures.  Wyatt, 2012 WL 1435708, at *7 (citing Martin v. Town of Brattleboro, No. 2:07-cv-260, 2008 WL 4416283, at *1 (D. Vt. Sept. 24, 2008) ("accept[ing]" Report and Recommendation with respect to procedural due process issue)).

There has been no allegation that Cindy Howarth was directly involved in the decision to terminate Plaintiff's employment.  She cannot be held liable for a decision she did not make.

Cindy Howarth's Motion for Judgment on the Pleadings for Count Ten is GRANTED.

1. **Count Eleven: Violation of Vermont's Occupational Safety and Health Act**

Plaintiff alleges that she was terminated in retaliation for her phone call to EMS in violation of VOSHA. VOSHA provides "No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint . . . ." Vt. Stat. Ann. tit. 21, § 231(a). As previously discussed, the Vermont Supreme Court has stated the elements of a VOSHA retaliation claim as (1) the plaintiff was engaged in a protected activity, (2) the defendants knew of that activity, (3) plaintiff suffered an adverse employment action, and (4) a causal connection exists between plaintiff's protected activity and the adverse employment action. Mellin, 790 A.2d at 417-18.

There has been no allegation that Cindy Howarth discriminated against Plaintiff as a result of the call to EMS. At no point in the Complaint did Plaintiff allege that Cindy Howarth knew about the phone call. In addition, all of Cindy Howarth's acts of harassment occurred before July 2010 when the call was made.

Cindy Howarth's Motion for Judgment on the Pleadings for Count Eleven is GRANTED.

### m. Count Fourteen: Violations of Vermont's Fair Employment Practices Act

Plaintiff has alleged violations against all defendants under VFEPA. Cindy Howarth has filed a Motion for Judgment on

the Pleadings arguing that the law applies to employers and
supervisory agents but not to fellow co-employees like her.

The Vermont Supreme Court has decided that VFEPA allows for
suits against supervisors in their individual capacities.
Payne, 987 A.2d at 953.  It arrived at this conclusion despite
the fact that federal courts have interpreted the federal
version of the law under Title VII to preclude individual
liability against individual employees.  Payne, 987 A.2d at 948.
Both laws prohibit conduct by the employer and "any agent" of
such employer.  Id. at 947-49.

In Payne, the Court found two differences between Title VII
and VFEPA which became the basis for its decision: the small
business exception and the available relief.  Id. at 949-50.
The available relief discussion is particularly relevant here.
Under the federal law, relief includes back pay and equitable
relief such as reinstatement as well as compensatory and
punitive damages.  Id.  However, its compensatory and punitive
damages are tied to the size of the employer.  Id. at 950.
Courts took this consideration of size as an indication that the
law was not meant to apply to individuals.  Payne, 987 A.2d at
950.  The Vermont Supreme Court explained how the relief
provisions under the VFEPA were different:

> In this subsection, any "person aggrieved by a
> violation" may seek "damages or equitable relief,
> including restraint of prohibited acts, restitution of
> wages or other benefits, reinstatement, costs,
> reasonable attorney's fees and other appropriate
> relief." In 1999, the Legislature specified that the
> damages available under the private right of action
> included "compensatory and punitive." Any one of those
> remedies can be extracted from an individual agent or
> *co-employee*, as well as from the traditional employer.

Id. at 950-51 (emphasis added) (citations omitted).

While the Payne decision specifically dealt with a
supervisor being sued in an individual capacity, the
Vermont Supreme Court stated that VFEPA's remedies could
apply against co-employees as is does to supervisors. This
Court finds that VFEPA includes liability for co-employees
as well.

Cindy Howarth's Motion for Judgment on the Pleadings
for Count Fourteen against is DENIED.

### Conclusion

For the Barre City Fire Department, the Court grants
judgment all counts against it and orders its name removed from
the caption.

For the City of Barre, the Court grants judgment on Counts
Six, Seven, and Eight. The Court denies judgment on Count
Thirteen.

For Chief Timothy Bombardier, the Court grants judgment on counts Two, Six, Seven, and Eight.  The Court denies judgment on Counts Three, Five, Ten, Eleven, Twelve, Thirteen and Fourteen.

For Deputy Chief Joe Aldsworth, the Court grants judgment on Count Eleven.

For Captain Robert Howarth, the Court grants judgment on Counts One, Two, Three, Five, Six, Seven, Eight, Nine, Ten, Eleven, Twelve and Fourteen.

For Call Force Firefighter Cindy Howarth, the Court grants judgment on Counts One, Two, Three, Four, Five, Six, Seven, Eight, Nine, Ten and Eleven.  The Court denies judgment on counts Twelve and Fourteen.

Dated at Burlington, in the District of Vermont, this 6th day of August, 2012.

/s/William K. Sessions III
William K. Sessions III
U.S. District Court Judge